UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER STROJNIK,<br><br>   Plaintiff,<br><br> v.<br><br>VY VERASA COMMERCIAL COMPANY LLC, et al.,<br><br>   Defendants. | Case No. 3:19-cv-02556-WHO<br><br>**ORDER DISMISSING CASE FOR LACK OF SUBJECT MATTER JURISDICTION** |

Longtime lawyer and pro se plaintiff Peter Strojnik alleges various violations by the defendant's hotel of the Americans with Disabilities Act ("ADA"). After his complaint was filed, Strojnik was declared a vexatious litigant in this District, primarily because he has filed dozens of near-identical ADA complaints against different defendants that were routinely dismissed for making only vague, conclusory allegations that did not demonstrate cognizable injury. The complaint in this case appeared to suffer from that defect. I ordered Strojnik to show cause why the complaint should not be dismissed for lack of subject matter jurisdiction. Despite the many opinions in his cases that have explained the deficiencies in his pleadings, his response and proposed amendments fail to adequately demonstrate that he has standing to bring an ADA claim. Giving Strojnik another opportunity to amend would be futile. I dismiss the case with prejudice.

**BACKGROUND**

Strojnik is a "disabled person as defined by the ADA," 42 U.S.C. § 12101 *et seq.* Complaint ("Compl") [Dkt. No. 1] ¶ 2. He describes himself as an "ADA tester." *Id.* Add. B at 30. He alleges he has several disabilities, including prostate cancer; renal cancer; neural foraminal stenosis; a missing knee; limitation on the use of his shoulders, elbows, and wrists; and pleurisy.

Declaration of Peter Strojnik ("Strojnik Decl.") [Dkt. No. 46-5] at 3–4.

Strojnik filed this case against defendant VY Verasa Commercial Company LLC dba The Westin Verasa Napa ("the Westin"), which operates a hotel in Napa, California ("the Hotel"). Compl. ¶ 5.[1] He alleges that he "is deterred" from visiting the Hotel due to its failures to comply with the ADA and various provisions of state law. *Id.* ¶ 11. He claims that he "intends to visit [the] Hotel at a specific time when . . . [it] becomes fully compliant." *Id.* ¶ 13.

Strojnik alleged that numerous ADA-non-compliant barriers deterred him from visiting the Hotel. They are discussed in detail below. In general, he claimed that third-party booking websites provided insufficient information about the Hotel's accessibility features and that he encountered physical or architectural barriers at the Hotel. *See id.* ¶¶ 14–25, Add. A.

While this case was pending before me, Magistrate Judge Donna Ryu dismissed another case that Strojnik brought against a different defendant for alleged ADA violations at its hotel. *See Strojnik v. IA Lodging Napa First LLC*, No. 19-cv-03983-DMR, Dkt. No. 66 (N.D. Cal. June 1, 2020). Judge Ryu held that Strojnik had not demonstrated that he possessed standing, a necessary component of a court's subject matter jurisdiction. *Id.* at 10. Strojnik had already been permitted to amend his complaint once. *Id.* at 1. Both complaints in that case, Judge Ryu held, contained only "generic descriptions" that were "too vague to assess whether and how Strojnik was injured." *Id.* 9 (internal quotation marks omitted). Strojnik alleged "that he encountered numerous barriers during his visit." *Id.* at 5. Those barriers were depicted in a series of photographs with "vague and generic" captions. *Id.* at 8. He did not explain how the barriers related to his disability or were out of compliance with the ADA. *See id.* at 8–9.

Judge Ryu also declared Strojnik a vexatious litigant. *Id.* at 22. Strojnik is a former lawyer. *Id.* at 4. Judge Ryu explained that while Strojnik was an attorney, he represented individuals with disabilities and "filed over 1,700 complaints in Arizona state courts." *Id.* As another federal court explained, the Arizona Attorney General intervened and more than "1,000 identical cases filed by Strojnik and [his associate] were consolidated." *Id.* at 5 (quoting

---

[1] The case was also originally filed against Greg Hurley, Jane Doe Hurley, and the law firm Sheppard Mullin, but they have been dismissed from the case. *See* Dkt. Nos. 19, 37.

*Advocates for Individuals With Disabilities LLC v. MidFirst Bank*, 279 F. Supp. 3d 891, 894 (D. Ariz. 2017)). The state court found that, in all but one, Strojnik had failed to demonstrate his clients possessed standing. *Id.* The State Bar of Arizona later suspended Strojnik's license to practice because of his ADA and state-law disability litigation. *Id.* Since that disbarment, he has "represented himself in numerous ADA cases before district courts in the Ninth Circuit." *Id.* Judge Ryu found that Strojnik's ADA complains were usually "substantially identical, substituting only the name of the defendant and other minor details." *Id.* at 17. Judge Ryu exhaustively reviewed Strojnik's litigation history. *See id.* 16–21. Based on this history—which was dominated by "near identical suits" and numerous courts' concerns about whether Strojnik's claims had a good-faith basis—Judge Ryu found that Strojnik's "litigation tactics are frivolous and harassing." *Id.* at 21. As a result, Judge Ryu declared him a vexatious litigant and ordered that Strojnik not file any civil action in this District that challenges access to public accommodations by people with disabilities without the general duty judge screening the complaint to determine whether "it plausibly allege[s] Article III standing." *Id.* at 22. A court in the Central District of California has also declared Strojnik a vexatious litigant. *Strojnik v. SCG America Construction Inc.*, No. 19-cv-1560, Dkt. No. 25 (C.D. Cal. Apr. 19, 2020).

Prior to Judge Ryu's order, the Westin moved to declare Strojnik a vexatious litigant. Dkt. No. 39. I deferred ruling on that motion so that Judge Ryu could first rule on her pending motion. Dkt. No. 41. After she did, I noted that it "appear[ed] that the Article III standing defects Judge Ryu identified . . . are also present in the complaint before me." Order to Show Cause ("Order") [Dkt. No. 45] 2. I observed that Strojnik "describes the hotel's website and facilities with photographs and captions that reference inaccessibility, but none of the allegations are tied to the specifics of his asserted disability." *Id.* Accordingly, I ordered Strojnik to show cause why this case should not be dismissed with prejudice for lack of federal subject matter jurisdiction. *Id.* I said that he "should address specific allegations he would bring in an amended complaint to cure" his standing deficiencies. *Id.* Strojnik filed his Response to my Order on August 28, 2020. Plaintiff's Response to the Court's OSC ("Response") [Dkt No. 46]. The Westin filed a Reply on September 3, 2020. Defendant's Reply to Plaintiff's Response to the Court's OSC ("Reply") [Dkt

3

No. 47].

**LEGAL STANDARD**

Standing is a "core component" of Article III's case-or-controversy requirement. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff bears the burden of pleading and proving standing by "demonstrat[ing] [1] that he has suffered an injury-in-fact, [2] that the injury is traceable to the [defendant's] actions, and [3] that the injury can be redressed by a favorable decision." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011). In a case brought under the ADA, the plaintiff must also "establish standing to pursue injunctive relief, which is the only relief available to private plaintiffs under the ADA." *Id.* As a result, the plaintiff must demonstrate a "real and immediate threat of repeated injury." *Id.* (internal quotation marks omitted). An ADA plaintiff can do so "either by demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility." *Id.* at 944. The barrier that allegedly violates the ADA and causes this deterrence or injury-in-fact must affect the plaintiff's "full and equal enjoyment of the facility on account of his particular disability." *Id.* at 947. A plaintiff, however, "must do more than offer labels and conclusions that parrot the language of the ADA." *Id.* at 955 n.9. And plaintiffs cannot simply point to "bare procedural violation[s], divorced from any concrete harm." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), *as revised* (May 24, 2016).

**DISCUSSION**

Strojnik's Complaint failed to plausibly allege that he possessed standing. Consequently, the central issue is whether leave to amend should be granted in light of the allegations in his Response. I conclude that, despite the guidance Strojnik has received from many courts about his similar deficient pleadings, and despite Judge Ryu's finding that he is a vexatious litigant, Strojnik has still failed to adequately demonstrate that he was injured or deterred by any of the violations he alleges. I will, accordingly, dismiss his Complaint with prejudice.

**I. Original Complaint**

To the extent Strojnik argues that his Complaint was sufficient, he is incorrect. That Complaint suffered from the same jurisdictional defects as those that have led to numerous

dismissals, including Judge Ryu's described above. Strojnik's allegations were made up of photographs and short, vague, conclusory captions that shed no light on his purported injuries. To take a typical example, Strojnik included a photograph of the Hotel's bar and, underneath, the caption "Inaccessible bar." Compl. Add. A at 24. In our notice-pleading system, plaintiffs need not exhaustively detail every relevant fact. But they must do more than provide vague, conclusory statements that do not permit the defendant or the court to understand the alleged injury. *See Chapman*, 631 F.3d at 955 n.9. Strojnik did not explain how any of the alleged barriers he encountered connected to his disabilities. Nor did he explain how they deprived him of full and equal enjoyment of the Hotel. He simply alleged, parroting the statutory language, that he had been deterred from staying at the Hotel by those barriers.

As a result, the Complaint is dismissed. I now turn to whether I should allow Strojnik to amend in light of his Response to the Order to Show Cause.

## II. Leave to Amend

Courts generally "freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). That is particularly true when the plaintiff is pro se. But a court need not permit amendment if it would be "futile." *See Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010). Here, I have given Strojnik a chance to explain why he can adequately allege standing. He has failed to do so.

There are two theories of standing under the ADA: deterrence and injury coupled with intent to return. *Chapman*, 631 F.3d at 950. In other words, a plaintiff can show standing by pleading that a barrier did not comply with the ADA and either (1) deterred him from lodging at the facility or (2) injured him and that he has an intent to return once the barrier is removed. *Id.* Both theories are predicated on an ADA-non-compliant barrier. Both theories require that these barriers deprive (or, under a deterrence theory, would deprive) the plaintiff of the "full and equal enjoyment" of the facility. *See* 42 U.S.C. § 12182(a); *Chapman*, 631 F.3d at 945. And both theories require that this barrier be connected to the plaintiff's individual disabilities and deprive the plaintiff of full and fair enjoyment on account of his "specific disability." *Chapman*, 631 F.3d at 953.

In his Response, Strojnik offers the same two types of barriers as in his Complaint: insufficient information on third-party booking websites and architectural or physical barriers at the Hotel. As I explain, Strojnik still has not adequately shown that either type of barrier deprived him (or would deprive him) of full and fair enjoyment of the facility. In light of Strojnik's long, consistent history of similar pleading deficiencies, I will not grant leave to amend.

### a. Strojnik's History

As noted, Strojnik has been declared a vexatious litigant in this District. That finding—as well as numerous dismissals of his cases—largely resulted from the fact that he has, over and over, filed ADA cases that make vague, conclusory allegations written in similar or identical "boilerplate" language. *See IA Lodging*, No. 19-cv-03983-DMR at 17. As an attorney, Strojnik filed over 1,700 cases in Arizona alleging ADA violations. *Id.* at 4. Over 1,000 cases, a court eventually found, failed to adequately plead standing. *See MidFirst Bank*, 279 F. Supp. 3d at 894. Eventually, the state Attorney General and Bar intervened. *See IA Lodging*, No. 19-cv-03983-DMR at 5. After Strojnik consented to disbarment in May 2019, his pattern continued as a pro se plaintiff. His behavior in this case is consistent with the way he pleaded others—and consistent with the reasons he was declared a vexatious litigant. *See id.* 16–18.

Strojnik's litigation history shows that he has received ample warnings and guidance from courts about how to bring an adequate, non-frivolous ADA case. In combatting the vexatious litigant motion, Strojnik turned over a spreadsheet purporting to list all of his ADA cases filed in California. *Id.* at 11. It listed 114 cases, including 34 in this District. *Id.* at 11–12. None were tried, 60 were settled, nine were dismissed by the court, 41 were ongoing. *Id.* at 11–15. Of the ongoing cases, four were dismissed *sua sponte* for failure to state a claim with leave to amend, eight were dismissed on motion with leave to amend, 12 had pending dispositive motions, and only two denied a motion to dismiss. *Id.* Further, there were four pending motions (including in that case and this one) to declare Strojnik a vexatious litigant. *Id.* As noted, two federal courts in California have now done so. But even Strojnik's submitted information "omit[ted] some important details." *Id.* at 15. At least two cases had been dismissed before Strojnik "implied" they were ongoing. *Id.* Strojnik also was told to provide examples in which courts found his

6

standing allegations adequately pleaded; one of the cases he offered was a magistrate's report and recommendation on a motion for default judgment—and the district court did not adopt it because of Strojnik's failure to adequately allege facts supporting standing. *Id.*

More important than the number of Strojnik's cases is their nearly identical nature. The Complaint Strojnik filed with Judge Ryu was, as she found, "substantially identical" to his Complaint here. *Id.* at 17. The only changes were the names of the defendants and minor details to account for it being a different hotel. This is consistent with Strojnik's approach generally. As Judge Ryu and other courts have found, Strojnik generally uses "template allegations" that do not change across cases. *Id.* As one court put it, "[t]emplate complaints filled with non-specific allegations have become" Strojnik's "stock-in-trade." *MidFirst Bank*, 279 F. Supp. 3d at 893. Courts have, as a result, warned Strojnik again and again that his allegations are bare, vague, conclusory, and inadequate. *See IA Lodging*, No. 19-cv-03983-DMR at 17–18 (collecting examples of cases). I described above an example from Strojnik's Complaint in this case. Other courts have described that this type of allegation—photographs with generic, conclusory captions—is what they encountered in Strojnik's pleadings too. *See id.*; *Strojnik v. Orangewood LLC*, 8:19-cv-00946-DSF-GJS, 2020 U.S. Dist. LEXIS 11743, at *10 (C.D. Cal. Jan. 22, 2020).

As Judge Ryu explained, these template complaints "raise important concerns regarding the fundamental requirement of Article III standing." *Id.* at 17. This is because ADA plaintiffs must plead that barriers that violate the ADA injured them—through deterrence or actual encounters. They must link the barrier to their specific disability. They must plead that, because of the interplay between the barrier and their disability, they were or would be deprived of full and equal enjoyment of the accommodation. Strojnik's vague, pattern pleading undermines all of this because it does not demonstrate genuine injury. As a result, courts have warned him that failure to allege sufficient connection between the ADA violations and his or his clients' disabilities is fatal to standing.

Nor is Strojnik's dubious behavior limited to filing complaints in the first place. Courts have also singled out his "intransigence in changing his pleading practices despite having specific court guidance on the deficiencies." *IA Lodging*, No. 19-cv-03983-DMR at 18; *see, e.g.*,

7

*Orangewood*, 8:19-cv-00946-DSF-GJS, 2020 U.S. Dist. LEXIS 11743, at *10 n.7.  When his deficient form complaint was challenged, Judge Ryu described how he filed a "generic opposition brief" so inadequate that it "raise[d] the question of whether his pleadings are made in good faith or whether he is merely relying on the federal court's liberal policy of granting leave to amend." *Id.* at 19.  As the other federal California court to declare Strojnik a vexatious litigant put it, "countless courts have questioned Strojnik's motives in pursuing the litigation and whether he has a good faith basis for his claims."  *See SCG America Construction*, No. 19-cv-1560, Dkt. No. 25.

While courts have not uniformly dismissed Strojnik's ADA claims, the overwhelming thrust of Strojnik's filings is toward inadequate form pleading and away from genuine engagement with courts' repeated, clear concerns.  This history is relevant to whether leave to amend should be granted.  Strojnik, though a pro se plaintiff, is a former lawyer specializing in ADA claims.  By his own account, he is an "expert" in the ADA and its implementing regulations.  Strojnik Decl. at 1.  Now, after thousands of cases in his career and dozens in California in the past few years alone, Strojnik has guidance from innumerable courts about the flaws in his pleading.  I would only permit Strojnik leave to amend if, in light of all of this, he made a genuine showing that he is not merely repeating his pattern.

### b.  Third Party Booking Websites

Despite making other changes to his allegations, Strojnik has not altered his claims that relate to two third-party booking websites.  Instead he—as he did in the Complaint—posts photos of those websites with captions that allege the websites do not describe the Hotel's accessible features "in enough detail" to permit him to assess whether it meets his accessibility needs.  Strojnik Decl. Add. B at 9–15; *see also* Compl. Add. A at 12–18.  As several other judges have found with respect to Strojnik, these allegations alone cannot support standing.  *See, e.g.*, *IA Lodging*, No. 19-cv-03983-DMR, Dkt. No. 66 at 8; *Orangewood*, 8:19-cv-00946, 2020 U.S. Dist. LEXIS 11743, at *13–23.

The broad mandate of the ADA is implemented, among other ways, through more precise requirements in the ADA Accessibility Guidelines ("ADAAG").  *See Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1080–81 (9th Cir. 2004) (describing the regulatory implementation

8

of the ADA).[2] The ADAAG "provides the objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations." *Chapman*, 631 F.3d at 946. Because Strojnik has sued the Westin, not the third-party websites, the Westin would only violate the ADAAG if it failed to "make[] available such rooms and information to a third-party reservation provider." 28 C.F.R. § Pt. 36, App. A.[3]

Even assuming Strojnik has properly pleaded that the Westin has failed this obligation, he has still not demonstrated any cognizable injury. His conclusory statement that accessibility information is lacking is not enough. Strojnik has not indicated what information is lacking or why that lack of information denied him the ability to assess whether the Hotel could accommodate his disabilities. Despite other courts having warned him of these exact deficiencies, Strojnik not only failed to change his allegations, he failed to use his Response to explain how he was injured or how the Westin deprived him of the ability to assess the Hotel for his accessibility needs.

### c. Physical Barriers

Strojnik maintains that most of the physical barriers in his Complaint give rise to ADA standing. As noted, Strojnik's Complaint contained photographs accompanied by vague, generic captions. Now, Strojnik has made two relevant changes. First, he has listed what major life activities are "impacted" by his disabilities—though he has not explained what the concrete effects are other than one-word descriptions such as "walking." Strojnik Decl. at 3–4. Second, he has added explanation to those short, conclusory descriptions. Underneath each description, Strojnik has added a copy-and-pasted explanation, which reads, "Based on his impairments and the effect thereof on major life activities described in the body of this Declaration, see ¶¶ 3-11 and Table in

---

[2] The ADAAG was issued by the Architectural and Transportation Barriers Compliance Board and adopted without change by the Attorney General as the "Standards for Accessible Design." *See Fortyune*, 364 F.3d at 1080. But Strojnik uses the name ADAAG to describe the regulations and the Ninth Circuit has done the same. *See, e.g.*, *Chapman*, 631 F.3d at 946.

[3] This Guidance by the Department of Justice is given "substantial deference" when determining what precise technical requirements public accommodations must follow to comply with the ADAAG. *Kohler v. Presidio Int'l, Inc.*, 782 F.3d 1064, 1069 (9th Cir. 2015). Strojnik does not indicate any reason to withhold that deference here and, in fact, relies on the ADAAG.

¶12, the ADA violation depicted in this photograph deters [Strojnik] from visiting the Hotel because, in violation of the ADAAG . . . ." *See, e.g.*, *Id.* Add. B at 17. Each description then concludes with one or two further, individualized sentences that attempt to explain the barrier and its effect on Strojnik. Other than these changes, Strojnik largely repeats bare allegations from his complaint—such as a general statement that he is deterred, *id.* at 4—and he includes long quotations that describe ADA definitions, basic ADA requirements, and snippets of caselaw.

This elaboration is more than was present in the Complaint. It is not, however, enough to demonstrate standing. Many of Strojnik's explanations suffer from particularized problems. All share a common deficiency: they do not demonstrate that Strojnik was deprived of full and equal enjoyment of the Hotel, usually because Strojnik points to things that might be bare procedural violations but does not allege that there were not adequate alternatives. He has been told many times that he must connect an alleged barrier to a disability such that it demonstrates he was or would be deprived of full and equal enjoyment of the facility. And, despite submitting more than 50 pages of materials, including a 28-page declaration that attempts to fix the previous deficiencies, he never indicates which sections of the ADAAG are allegedly being violated.

To cure these problems, Strojnik includes one new statement at the bottom of his declaration. He writes, "The manner in which the barriers denied Declarant full and equal use or access, and which deter Declarant from visiting the Hotel: Above described barriers denied Declarant full and equal access to the benefits of the facility." Strojnik Decl. Add. B at 28. That conclusory allegation, which simply parrots the statutory language, is not sufficient to create standing. None of his individual explanations fare any better.

### i. Loading Zone

Strojnik's Complaint alleged that there was no "marked passenger loading zone" and contained a picture purporting to be the front of the Hotel. Compl. Add. A at 19. In his Response, Strojnik adds that the Hotel's loading zone is in violation of the ADAAG because it "does not provide an exclusive, marked passenger loading zone." Strojnik Decl. Add. B at 17. As a result, Strojnik alleges, he "would run the risk of having the passenger loading zone occupied by a non-disabled individual" and "have to (1) walk further to the vehicle and (2) carry his luggage at a

greater distance." *Id.* This, he argues, would cause him "pain, suffering and discomfort." *Id.*

The Westin argues that all of Strojnik's statements, including this one, fail "to tie any of the alleged violations to his specific disability." Reply 3. Although Strojnik does not explicitly connect this violation to a particular disability, a fair reading of the Response creates that connection. Strojnik asserts that he has renal cancer that impacts his movement; neural stenosis, a missing knee, and pleurisy that impact walking and carrying objects; and limited shoulder, elbow, and wrist use that impacts carrying objects. *Id.* at 3–4.

Yet much of Strojnik's description is, as detailed above, still "boilerplate." *IA Lodging*, No. 19-cv-03983-DMR, Dkt. No. 66 at 17. And he has not cited any requirement in the ADAAG or other authority that requires the sort of marking he alleges is required, or how the lack of such a marking violates the ADA. As a self-described expert, he must know that the ADAAG requires only that the access aisles to passenger loading zones "be marked so as to discourage *parking* in them." ADAAG 503.3.3 (emphasis added). He does not allege if or how the loading zone fails to meet this requirement. He also appears to argue that the loading zone should exclude people without disabilities. He cites no provision of the ADAAG—or any other authority—that is violated by the Hotel's current setup.

Strojnik has not met his burden. Additionally, the photograph he provided includes a painted pole marked "Pull Forward" and another topped with a stop sign. Presumably, these are to encourage loading and discourage parking. The photo depicts a blue-marked curb beneath a blue accessibility placard next to both the main stairs and what appears to be a ramp also marked by a blue accessibility placard. This further indicates that Strojnik does not plausibly allege an ADA injury.

### ii. Entryway

Strojnik's Complaint alleged that the Hotel had an "[i]naccessible entry with no signage to accessible route." Compl. Add. A at 20. Now, Strojnik adds that the Hotel is in violation of the ADAAG because it does not provide an "accessible route to the lobby" or "signage to [the] accessible route." Strojnik Decl. Add. B at 18. Strojnik explicitly connects these alleged violations to his disabilities that cause "diminished capacity of climbing stairs." *Id.* These added

11

1  phrases, however, are simply longer restatements of his previous conclusory allegation.  Not
2  providing an "accessible route to the lobby" or signage for that particular route is, even if true, an
3  insufficient to demonstrate injury.  Strojnik has not alleged that the door was part of an accessible
4  route or that there was not another accessible route to get into the lobby; he does not allege what
5  signage is required or how the lack of it deprived him of full and equal enjoyment.  *See*
6  *Orangewood*, 8:19-cv-00946-DSF-GJS, 2020 U.S. Dist. LEXIS, at *10 (dismissing Strojnik's
7  claims for lack of standing because he did not allege these facts).  Consequently, Strojnik has not
8  demonstrated that, even if what he alleges is true, he was denied full and equal enjoyment of the
9  Hotel because of this alleged barrier.

### iii.  Front Door

11  In his Complaint, Strojnik alleged only that the front door was "[m]ore than 5lbs to open."
12  Compl. Add. A at 21.  In his Response, Strojnik alleges that a door requiring more than five
13  pounds to open violates the ADAAG and that his ability to push and open doors is impaired by his
14  disabilities.  Strojnik Decl. Add. B at 19.  But, again, Strojnik has not alleged that the door is part
15  of an accessible route, or that there is not an adequate alternative way for him to enter the lobby
16  such that the alleged barrier denied him full and equal enjoyment of the Hotel.

### iv.  Concierge Desk and Bar

18  Strojnik's Complaint alleged only that the Hotel's concierge desk and bar were
19  "inaccessible."  Compl. Add. A at 22–24.  In his Response, he alleges that the desk and bar violate
20  the ADAAG (he does not say how) and he is deterred because of his "potential use of wheelchair
21  [sic]."  Strojnik Decl. Add. B at 20–22.  That statement is identical in substance with the allegation
22  that Strojnik is deterred because the bar and desk are inaccessible due to his disability.  They are
23  conclusory.  Strojnik does not say which provision(s) of the ADAAG the bar and desk violate.
24  Construed liberally, Strojnik's claim is that the desk and bar are too high to sit at with a
25  wheelchair, but he has not demonstrated that that fact deprives him of full and equal enjoyment.
26  He has not shown, for instance, that there are not ways to access the bar and concierge by which
27  he would have full and equal enjoyment of the facility, or that there are not accessible equivalents.
28  He also has not alleged that he would need to access the bar using a wheelchair, or that only

12

accessing it that way would deprive him of full and equal access; the mere fact that he sometimes uses a wheelchair—which is the most that can be gleaned from his Complaint—is insufficient.

### v. Non-Accessible Restroom

Strojnik's Complaint included an allegation that the "lobby bathroom" door requires more than five pounds to open and, below a photo of that door's handle, the words "inaccessible hardware to lobby bathroom." Compl. Add. A at 25–26. He has added in his Response that the weight issue limits his access because his "ability to push and open doors [i]s impaired," Strojnik Decl. Add. B at 23, and the handle requires Strojnik to twist his wrist to turn it, which is difficult with his disabilities, *id.* at 24. Even if it were left at that, Strojnik's allegation would still fail for the same reasons as his complaint about the front door: he has not alleged that there was no adequate accessible alternative. To drive that point home, the photograph that Strojnik submitted depicts the following sign next to the restroom: "Our accessible bathroom is located near the ATM on the other side of the lobby." *Id.*

### vi. Second Restroom

In the Complaint, Strojnik included a photo of another restroom and stated "3s closing time in lobby bathroom." Compl. Add. A at 29. In the Response, he adds that "the lobby restroom door closes in 3 seconds instead of the required 5+ seconds. # [sic] seconds is not enough time for [Strojnik] to get in and out of the lobby restroom." Strojnik Decl. Add. B at 27. This allegation again fails to demonstrate an ADA injury. Strojnik has not claimed that there were no adequate alternatives that would give him full and equal enjoyment of the facility.

### vii. Shower

The Complaint alleged two problems with a shower: "Shower interference with seat" and "No shut off on [sic] spray unit." Compl. Add. A at 27–28. In his Response, Strojnik elaborates that "either the shower unit or the shower seat is unusable because of the interference between them" and that his "ability to stand in the shower is impaired." Strojnik Decl. Add. B at 25. The shower head, Strojnik alleges, "is not equipped with a shut off valve," which "endangers [Strojnik] because when the water is either too cold or too hot it prevents him from shutting it off with one hand, risking injury." *Id.* at 26. Here, unlike some of Strojnik's other claims, he truly does not

13

1  connect it to a particular disability.  Liberally construed, Strojnik's allegation with the shower

2  head is that he must be able to turn it off using the head itself, but he cites no authority for that

3  proposition in the ADAAG and he does not explain in enough detail to permit me to determine

4  that he was denied full and equal enjoyment.  Moreover, it is unclear what "interference" between

5  the shower seat and shower unit means or how it is an ADA violation.

### d. Futility of Amendment

Strojnik argues that, if I dismiss his Complaint, I should do so with leave to amend because dismissal for lack of standing is not a dismissal on the merits.  Response 2.  I will not give Strojnik leave to amend because it would be futile.  *Gordon*, 627 F.3d at 1094.  To start, his Response to my Order *was* a chance to propose amendments.  Strojnik is not an untutored lay person attempting in good faith to navigate pleading requirements.  He was a seasoned lawyer with thousands of ADA cases under his belt.  He was on notice from dozens of other rulings about what is required to properly allege standing.  Instead of curing those deficiencies, he largely restated old claims and added new, conclusory boilerplate.  Those few sentences for each barrier he did change are not enough to demonstrate that, on account of his specific disabilities, any barrier failed to comply with the ADA or deprived him of full and equal enjoyment of the Hotel.  At most, he identified bare procedural violations—and sometimes not even those.  Strojnik has proposed his amendments; they would not create standing.  Leave to amend is DENIED.

### CONCLUSION

The Complaint is DISMISSED WITH PREJUDICE.[4]

**IT IS SO ORDERED.**

Dated: September 15, 2020

William H. Orrick
United States District Judge

---

[4] As I indicated in my Order, I will not exercise supplemental jurisdiction over Strojnik's state-law claims (Counts Two, Three, and Four) now that the related ADA claim has been dismissed. *See* 28 U.S.C. § 1367(c)(3).  Strojnik's final claim (Count Five) was a retaliation claim predicated on the conduct of the law firm defendant now dismissed from the case.  Strojnik makes no argument in his Response that this claim should not be dismissed.  All claims are therefore DISMISSED.